GEORGE L. OWENS, BY HIS NEXT FRIEND, GEORGE OWENS, PETITIONER-PROSECUTOR, v. BENNETT AIR SERVICE ET AL., RESPONDENTS.

Submitted October 2, 1945—Decided January 15, 1946.

Before Justices CASE, BODINE and PERSKIE.

For the prosecutor, *Dixon, Levine & Levine* (*George E. Meredith,* of counsel).

For the respondents, *Crawford Jamieson.*

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. It presents the usual question of whether the accident arose out of and in the course of the employment. We think it did.

The prosecutor, a minor, was employed by respondent as a mechanic's helper and student pilot. On February 1st, 1941, while employed at the Princeton Airport of the respondent, the employee accepted an invitation of the owner of an aeroplane that had landed at the airport and had been serviced by the employee and a fellow worker, to take a flight. The employee accepted the invitation and the aeroplane

crashed after it had risen some 150 feet thereby causing severe injuries both to the employee and to the pilot of the aeroplane.

The Workmen's Compensation Bureau was of the opinion that the employee in accepting an invitation for a ride with a customer did a thing which was not contrary to the rules of the employer but which was in fact countenanced by the officials of the employer and that therefore the accident arose out of and in the course of the employment. On appeal, the Mercer County Court of Common Pleas reached the conclusion, without more, that at the time of the accident the employee was not performing any act that could reasonably be considered to be part of the duties of his employment or for the benefit of the employer, and reversed the Bureau. We granted *certiorari* to review the judgment of the Pleas.

On *certiorari* to review a workmen's compensation judgment, it is the duty of the Supreme Court to determine the law and the facts independently of the finding thereon by the lower courts. *Beerman* v. *Public Service Co-ordinated Transport*, 123 *N. J. L.* 479; 9 *Atl. Rep.* (*2d*) 690. Following is our independent finding of the facts.

Sometime in the month of August, 1940, the employee, accompanied by his father, traveled to the airfield of the employer near Hightstown, New Jersey, to seek employment as an aeroplane mechanic and also to be taught how to fly an aeroplane. The two had a conversation with the manager of the airfield and also the chief mechanic. They were told by the officials of the employer of the opportunities offered by the employer to its employees and in the course of the conversation between the employee and the officials of the employer several employees were pointed out who had progressed from student-mechanics to mechanics and flying instructors and especially one such employee who was then earning $50 a week.

The terms of the employment were discussed and closed. By these terms the employee was placed on probation for the first week and was to receive no pay for his work that week. The second week he was to receive $7.50 and thereafter he was to receive $7.50 a week plus forty-five minutes of free

flying instructions each week if his services were satisfactory. At the time of the accident he was receiving $10 a week plus the forty-five minutes of free flying instructions.

The employee's duties were of a very general nature and included wheeling out aeroplanes, assisting in their repair, servicing "planes" with gasoline and oil, transporting flyers to the factory at Lock Haven, Pennsylvania, to fly "planes" back to the employer's airfields, salvaging of wrecked aeroplanes and other activities. At no time did the employee receive any printed rules of conduct nor was he advised of any rules and the only rules of the employer the employee became acquainted with were those that were made known to him from time to time by his fellow employees.

After the second week, when the employee received his pay he was given a white slip which entitled him to the forty-five minutes of free flying instructions. He was free to take such flying instructions at any time he was not required to work. He took them in the morning, during the noon lunch hour, or in the afternoon. They were, however, taken with a licensed pilot in an aeroplane furnished by the employer. The time consumed in such instructions was entered in the employee's "Pilots Log Book" and the instructor was paid by the employer for such lessons. Additionally, the employee, with other mechanics hired by the employer, was permitted and encouraged to take flights during working hours both for "instruction purposes" and for "joyrides." He was permitted to and took flights with fellow employees who possessed a flying license. He made two flights with non-instructors, and he had made flights with other employees of the employer in order "to see that the ceiling was high enough so that there could be flying that day." He and other employees were permitted by the employer "to fly at will" provided that there was no work for them to do at the time. Despite objection by the foreman of mechanics to such practices, he was advised by his superior that the employees be encouraged in such practices in order that "they could get the feel of the air and get less nervous" and thus become better mechanics. And finally, the employee was not censured for taking flights with any pilot other than for flying instructions. The employer

had knowledge "that sometimes our instructors will ask one of the boys if they care to go up with them to test the ceiling, or check a plane."

1. We find as a fact that the flights taken by the employee with non-instructors, or others, were beneficial both to the employer and employee. Such flights, including the one taken at the time of the accident, had, in our judgment, ripened into a custom which the employer had "acquiesced" in and "tolerated" and had not prohibited. Such a custom "should not serve as a benefit to the employer and weigh against the employee." *Miller* v. *C. F. Mueller Co.*, 132 *N. J. L.* 540. Neither was the employee disciplined nor reprimanded for having taken any of the stated flights. His flight at the time of the accident was within the sphere of his employment. *Dubit* v. *Sheffield Farms Co., Inc.*, 118 *Id.* 411; 193 *Atl. Rep.* 546.

2. The Bureau found that the employee was entitled to temporary compensation from the date of his injury to July 24th, 1941, a period of 24-5/7th weeks. The attending physician testified that the employee's temporary disability ceased on October 1st, 1941; and his medical expert testified that such disability ceased in November of 1941, and the medical expert for the employer testified that "complete recovery" was effected in January of 1942. There is no proof to support the date of July 24th, 1941. We think that the employee is entitled to temporary disability compensation from the date of the accident to October 1st, 1941, the earliest date set by the physicians at which time such disability ceased.

3. As to the question of medical fees, we think that there is no necessity for submitting the physician's bill ($1,245.50) to the medical bill committee since there is nothing to contradict the testimony as to the reasonableness of the charge made by the attending physician. And since the doctor left his fee for testifying to the court's discretion there can be no complaint on that score. A fee of $50 for his attendance in court is a reasonable fee. *R. S.* 34:15–64.

The judgment of the Pleas is reversed. The judgment of the Bureau is modified in accordance with the views here expressed, and as so modified, it is affirmed, with costs.